UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**VERONICA BRAGG,**

        Plaintiff,

vs.

**TWIN CITIES AREA
TRANSPORTATION AUTHORITY**,

        Defendant.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff, **VERONICA BRAGG**, for her Complaint against Defendants Twin Cities Area Transportation Authority, stating the following:

### INTRODUCTION

1. Plaintiff Veronica Bragg was employed with Defendant for approximately seventeen years without issue or discipline until she was abruptly terminated due to her

race. Plaintiff was subsequently reinstated and submitted a letter to her supervisor outlining her belief that her treatment was due to her race. Following this letter and her reinstatement, Plaintiff returned to an objectively hostile work environment in which she was continuously falsely accused of work violations, slandered, ridiculed, and even wrongfully terminated a second time only to be reinstated. Ultimately, the working conditions became so intolerable that Plaintiff had no choice but to resign from her the place she spent most her career.

Within this Complaint, Plaintiff alleges she was subjected to a hostile workplace, discriminated against, and terminated due her race, age, and in retaliation for protected activity in violation of 42 U.S.C. § 1981 and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et. seq.*

## PARTIES

2. Plaintiff Veronica Bragg is a Caucasian individual who was employed with the Defendants and resides in Benton Harbor, Michigan, Berrien County.

3. On information and belief, Defendant Twin Cities Area Transportation Authority is a non-profit organization which operates through the use of state and federal funding to provide transportation throughout Benton Harbor, MI, and the surrounding areas. TCATA is organized under the laws of the State of Michigan and operates within the State of Michigan. Plaintiff was an employee of Defendant.

## JURISDICITON AND VENUE

4. This Court has original jurisdiction of Plaintiff's claims under to 42 USC § 1981 pursuant to 28 U.S.C. § 1331.

5. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

6. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

7. Veronica Bragg ("Plaintiff" of "Bragg") is a Caucasian woman and a member of a protected class based on her race.

8. Plaintiff was employed with Defendant Twin Cities Area Transportation Authority ("TCATA") for approximately seventeen years, most recently as the office and Human Resources Manager.

9. During her seventeen years with TCATA, Plaintiff had no write ups or significant discipline.

10. Out of over forty employees at TCATA, only an estimated three were Caucasian.

11. On or around July 28, 2021, TCATA's Executive Director Paul Gillespie ("ED Gillespie")(Caucasian) was terminated during a meeting of TCATA's Board of Trustees (the "Board").

3

12. On information and belief, the decision was influenced by a group of African American employees and board members seeking to take control of the organization.

13. Following ED Gillespie's termination, alleged acting Executive Director, Steven Wooden ("Wooden")(African American), fired or demoted every Caucasian employee, including Plaintiff, without cause or notice.

14. On information and belief, Wooden concurrently called several previous African American employees who had been either terminated or on leave status to return to work the following Monday because "big changes were going to happen."

15. On July 30, 2021, the Board held a special meeting and reinstated ED Gillespie.

16. On August 2, 2021, ED Gillespie reported back to work.  Plaintiff received a text from ED Gillespie telling her to hold tight, indicating she would be reinstated.

17. On August 5, 2021, Plaintiff received a text telling her that, instead, she would be placed on administrative leave until further notice. However, Plaintiff was told that she would be returning to work, and this was all a formality.

18. On August 6, 2021, Plaintiff was asked to meet with ED Gillespie and former Executive Director Bill Purvis ("Purvis"), who was now employed as by TCATA as a consultant.  At the meeting, Plaintiff was explicitly informed that several African American employees did not want her to return.  Plaintiff was not provided any

4

reasoning. Importantly, Plaintiff did not even work directly with several of these individuals requesting her termination. ED Gillespie stated that Plaintiff would not "want to come back to a hostile environment" and that she should quit instead.

19. Plaintiff informed ED Gillespie that she was not interested in quitting. However, ED Gillespie continued to push Plaintiff to quit several times during the meeting. Ultimately, ED Gillespie conceded that he could not fire Plaintiff because "she could sue."

20. Plaintiff returned to work after refusing to quit.

21. On August 9, 2021, Plaintiff was contacted and notified that TCATA Grant Manager Desha King ("King")(African American) had sent out a memo regarding federal taxes not being withheld from certain employees' checks. Although this task is not Plaintiff's responsibility, King publicly named Plaintiff as being responsible.

22. On August 10, 2021, former ED Purvis resigned from his position. Purvis stated to Plaintiff that ED Gillespie was "fishing for something to blame on you" and that the absurdity of blaming this tax issue on her was "the last straw" for him.

23. On August 11, 2021, Plaintiff received a text from ED Gillespie that she was being placed on paid administrative leave.

24. Around this time, on information and belief, TCATA was notified by its legal counsel that all of the actions taken by Wooden between July 28-30, 2021, were unauthorized and therefore void.

25. On August 19, 2021, ED Gillespie texted Plaintiff to notify her she was still on paid administrative leave.

26. On September 1, 2021, during a Board meeting, Plaintiff was falsely accused of accumulating an invoice for which she has no connection. After, the Board Secretary, Lisa Varrie, contacted Plaintiff about the allegations. Plaintiff denied any connection. After, on information and belief, Varrie contacted Desha King and learned that no actual investigation was done regarding the allegations against Plaintiff.

27. Plaintiff remained on administrative leave for months as they searched for a reason to justify her termination.

28. During this time period, an African American employee Richard Lee, was reinstated.

29. On October 4, 2021, Plaintiff was notified that she was to be reinstated into her position. However, new additional superficial issues were being brought forward against her and, as a result, she would be receiving a four-day unpaid suspension. *(Exhibit A)*.

30. On October 8, 2021, Plaintiff emailed ED Gillespie a letter outlining the discrimination she suffered at TCATA and requested it to be placed into her file. *(Exhibit B)* ED Gillespie responded that he was unwilling to place the letter in her file.

31. On October 11, 2021, Plaintiff returned to work at TCATA following her long unjustified administrative leave. The work environment Plaintiff returned to was openly hostile against her.

32. On November 10, 2021, the board voted to remove all write ups against the Plaintiff as being unjustified. At the same meeting, the board voted to place ED Gillespie on a 60 day review.

33. Following the actions of the board, Plaintiff's work environment went from bad to worse. Further, ED Gillespie stopped responding to work related emails from her for a period.

34. During this time, coworkers routinely harassed her to her face about a diverse range of issues pressuring Plaintiff to quit.

35. On December 9, 2021, Plaintiff was *again* terminated by ED Gillespie without justification.

36. On December 15, 2021, Plaintiff was *again* reinstated by the Board due to the clear retaliatory nature of her baseless termination. At the same meeting, the Board made the decision to terminate ED Gillespie.

37. A few weeks after the termination of ED Gillespie, former ED Purvis returned as a consultant.

38. On or around February 21, 2022, the Board hired a new executive director, Angel Crayton ("ED Crayton").

39. ED Crayton is African American.

40. Around the time of ED Crayton's hire, Plaintiff was notified by a Board member that they wanted the new executive director to be "Benton Harbor", meaning African American.

41. ED Crayton immediately targeted Plaintiff, as well as the other remaining Caucasian employee.

42. During ED Crayton's second week, she began aggressively insulting Plaintiff regarding her salary. ED Crayton asked Plaintiff if she "felt her salary was justified", as well as threatening that she could lower Plaintiff's salary if she felt like it. ED Crayton would comment on her belief that Plaintiff's salary was too high several more times.

43. Around this same time, ED Crayton questioned Plaintiff several times about a missing nightly deposit for which ED Crayton is on camera placing in her own office.

44. Plaintiff would bring ED Crayton routine paperwork which required the signature of the executive director for which ED Crayton would respond with comments such as "you must think this is all above me."

45. In another instance of hostility towards Plaintiff, ED Crayton scolded Plaintiff for no reason after a union representative visited her regarding an unrelated tax

issue. ED Crayton demanded to know what she was talking to the union representative about.

46.     Next, ED Crayton wrote Plaintiff if up simply because she had previously been issued a $250 holiday bonus by the interim executive director for her hard work and ED Crayton did not believe it was justified. ED Crayton was not even employed with TCATA at the time the bonus at the time in which the decision to issue Plaintiff the bonus was made.

47.     On March 21, 2022, Plaintiff resigned after feeling like she had no other choice. The hostile work environment she persevered in simply became objectively impossible to continue working in by any standard.

48.     On information and belief Plaintiff was replaced by an African American individual.

## COUNT I
## RACIAL DISCRIMINATION - 42 U.S.C. § 1981 (Constructive Discharge)

49.     All preceding paragraphs are incorporated by reference.

50.     Plaintiff is a member of a protected class on the basis of her race.

51.     As an employee, Plaintiff had a contractual employment relationship with Defendant.

52.     During the course of Plaintiff's employment with Defendant, Defendant violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits,

privileges, terms and conditions of employment in violation of 42 U.S.C. § 1981(b), as amended.

53. Plaintiff was treated differently than her African American comparators.

54. Plaintiff was disciplined and put on an unsubstantiated administrative leave due to her race.

55. Plaintiff was informed that she should resign from her position due to coworkers not liking her due to her race.

56. Plaintiff was terminated twice due to her race, although later reinstated.

57. Plaintiff was ultimately constructively discharged due to her race.

58. Plaintiff alleges that her termination is in violation of her right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

59. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT II
## HOSTILE WORK ENVIRONMENT - 42 U.S.C. § 1981

60. All preceding paragraphs are incorporated by reference.

61. Plaintiff was subject to unwelcome harassment and discriminatory treatment based on her race.

62. The work environment was abusive for Plaintiff.

63. The harassment and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of her employment.

64. The harassment and discriminatory treatment of Plaintiff was done by Plaintiff's direct supervisor(s).

65. Defendant was aware of the harassment and abuse Plaintiff was facing and failed to act.

66. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT III
## RETALIATION - 42 U.S.C. § 1981

67. All preceding paragraphs are incorporated by reference.

68. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when she complained of the racial discrimination he was subjected to in the workplace.

69. Defendant retaliated against Plaintiff due to this protected activity.

70. Defendant began holding Plaintiff's performance to a different standard in retaliation for this protected activity.

71. Defendant constructively discharged Plaintiff in retaliation of Plaintiff's protected activity.

72. Defendant's constructive discharge of Plaintiff's employment on this basis violates 42 U.S.C. § 1981.

73. Defendant has withheld Plaintiff's accrued vacation and sick pay in retaliation of her protected activity.

74. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT IV
## RACIAL DISCRIMINATION - ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

75. All preceding paragraphs are incorporated by reference.

76. At all relevant times, Plaintiff and Defendant were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

77. Defendant treated and disciplined Plaintiff different than similarly situated African American employees.

78. Plaintiff's race was a factor that made a difference in Defendant's decision to routinely discipline, place on administrative leave, and terminate Plaintiff without justification.

79. If not for Plaintiff's race, she would not have been subjected to the circumstances which led to her constructive discharge.

80. Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

81. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT V**
**RACIAL DISCRIMINATION (HOSTILE WORK ENVIRONMENT)**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***

82. All preceding paragraphs are incorporated by reference.

83. Plaintiff faced severe harassment in the workplace due to her race.

84. The harassment and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of her employment.

85. Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

86. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VI
## RETALIATION - ELLIOT-LARSEN CIVIL RIGHTS ACT,
## M.C.L. § 37.2101 *et. seq.*

87. All preceding paragraphs are incorporated by reference.

88. Plaintiff engaged in protected activity when she complained of the racial discrimination she was subjected to in the workplace.

89. Defendant retaliated against Plaintiff due to this protected activity.

90. Defendant began holding Plaintiff's performance to a different standard in retaliation for this protected activity.

91. Defendant disciplined and constructively discharged Plaintiff in retaliation of Plaintiff's protected activity.

92. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful practices in violation of § 1981 and ELCRA;

b. Award Plaintiff all lost wages and benefits, past and future, to which she is entitled;

c. Award Plaintiff appropriate equitable relief;

d. Award Plaintiff compensatory damages;

e. Award Plaintiff punitive damages;

f. Award Plaintiff reasonable attorney fees, costs and interest; and

g. Award such other relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244

                                                          (313) 246-3590  
                                                          jackwschulz@gmail.com  
                                                          *Attorneys for Plaintiff*

DATE: May 17, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**VERONICA BRAGG,**

            Plaintiff,

vs.

**TWIN CITIES AREA
TRANSPORTATION AUTHORITY**,

            Defendant.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

## DEMAND FOR TRIAL BY JURY

    Plaintiff Veronica Bragg hereby demands for a trial by jury.

                          Respectfully submitted,

                          By: /s/ Jack W. Schulz
                          Jack W. Schulz (P78078)
                          SCHULZ LAW PLC
                          PO Box 44855
                          Detroit, MI 48244
                          (313) 246-3590
                          jackwschulz@gmail.com
                          *Attorneys for Plaintiff*

DATE: May 17, 2022